IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DELLISE MARSHALL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL ASTRUE, ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> Defendant. ) <br> ) <br> ) | No. 11 C 8479 <br><br> Magistrate Judge <br> Maria Valdez |

# MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying plaintiff Dellise Marshall's ("Marshall" or "Claimant") claim for Disability Insurance Benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Marshall's motion for summary judgment [Doc. No. 19] is granted in part and denied in part. The Court finds that this matter should be remanded to the Commissioner for further proceedings.

## BACKGROUND

### I. PROCEDURAL HISTORY

Marshall originally applied for Disability Insurance Benefits on May 1, 2009, alleging disability since May 1, 2006. (R. 19.) Her application was denied initially on August 14, 2009 and upon reconsideration on November 6, 2009. (*Id.*) Marshall filed

a timely request for a hearing by an Administrative Law Judge ("ALJ"), which was held on January 13, 2011. (*Id.*) Marshall personally appeared and testified at the hearing and was represented by counsel. (*Id.*) A vocational expert also testified at the hearing, as did Marshall's husband William. (*Id.*)

On February 7, 2011, the ALJ denied Marshall's claim for benefits and found her not disabled under the Social Security Act. (R. 28.) The Social Security Administration Appeals Council denied Marshall's request for review (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner and therefore reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. FACTUAL BACKGROUND

### A. Background

Marshall was born on September 21, 1962. (R. 38.) She married William A. Marshall on June 14, 1997 and they remain married. (R. 152.) She worked as a sales clerk from 1996-97, as a desk clerk at a hotel from 1997-99, and as an in-home caregiver from 2003-06. (R. 186, 208.) She claims disability due to Crohn's disease and rheumatoid arthritis. (R. 40.) Marshall has had arthritis since age sixteen and was diagnosed with Crohn's at age thirty-seven. (R. 202.) She also has cysts on her liver and colitis. (R. 100.)

In her application, Marshall reported that she cannot carry anything over fifteen pounds and cannot walk more than one block at a time without rest. (R. 200.) She cannot squat or kneel for longer than five minutes, cannot sit for more

2

than one hour nor write for more than thirty minutes. (*Id.*) She relies on a cane to help her walk when her knees swell and uses a sling for her arm when her fingers and hand swell and stiffen. (R. 201.) She can prepare simple meals that take ten minutes, such as coffee, toast and cereal. (R. 197.) Marshall used to cook, but now she requires help to open cans, jars, and bottles, and can no longer hold pots and pans, so her husband makes the dinners. (R. 197, 204.) Her husband takes her shopping once every three weeks. (R. 198.) He also takes her to her doctor's appointments, although she goes alone if she cannot get a ride from her husband, her father, or her friend. (*Id.*) Her daily activities consist of reading, watching TV, listening to music or the radio, and taking care of her daughter. (R. 195.) She talks to her parents by phone every day. (R. 199.) She leaves the house four times per week, including twice weekly religious meetings, and requires someone to take her there. (*Id.*)

### B. Testimony and Medical Evidence

#### 1. *Marshall's Testimony*

Marshall testified that at the time period when she claims to have become disabled, she lived with her husband and daughter, who was seven or eight years old at the time. (R. 43.) She stopped driving around that time because her husband needed the car to get to his job. (*Id.*) At the time, the main problems were in her right knee and her lower back. (R. 42-43.) She continues to walk with a cane because arthritis has made her unstable and she sometimes loses her balance. (R. 40.) She stated that her husband does the major household chores, including

3

laundry, cleaning, and vacuuming, while Marshall can wipe down the countertops and they do dishes together. (R. 48-49.)

Marshall testified that she regularly attends twice-weekly religious meetings, but misses two or three meetings each month because the cramps from her Crohn's disease become too severe. (R. 50-53.) She takes prednisone, among other medications, but still has pain, fatigue, and inflammation that at times lead her to lie down or take a bath. (R. 46.) She stated that she experiences side effects including nausea, vomiting, and rectal bleeding. (R. 53.) The pain from arthritis is constant, while the Crohn's disease flares up intermittently with severe bouts of cramping, pain, and vomiting. (R. 54.) She testified that the episodes come roughly seven times per month, last for several hours each time, and are "unbearable." (R. 54-55.) When the Crohn's disease flares up, she can no longer read, talk to people, or leave the house. (R. 60.)

Marshall stated that she lost her jobs working at hotels in the late 1990s because she was fired for taking too many bathroom breaks and missing too much work. (R. 62.)

### 2. *William Marshall's Testimony*

Claimant's husband William Marshall testified that the claimant's Crohn's disease had been a long-term problem but got worse during the period from 2006-08. (R. 74-75.) He stated that he works for the Chicago Transit Authority and in 2006 he had to take leave under the Family Medical Leave Act because he had to

4

miss so much work to care for his wife. (R. 75.) He would commonly get calls to pick up the claimant from her job when she had gotten sick. (R. 78.)

### 3. *Medical Evidence*

#### a. **Treating Physicians**

Dr. Majid Serushan treated Marshall for rheumatoid arthritis and indicated in July 2005 that she has had rheumatoid arthritis since age sixteen. (R. 263.) Based on Dr. Serushan's referral, an MRI by Dr. Robert Breit revealed partial bilateral sacroiliac ankylosis and partial fusion of both sacroiliac joints in October 2005. (R. 267.) An x-ray of Marshall's right knee by Dr. Glen Geremia showed some degenerative changes, slight narrowing of the joint space, joint effusion, and partial fusion of the head of the fibula to the tibia. (R. 333.) The doctor indicated that it was possible that it was secondary to old trauma. (*Id.*) The left knee had no fracture or significant bony abnormalities. (*Id.*)

Dr. Jeffrey Goldman diagnosed Marshall with Crohn's disease. (R. 308.) In 2008 he noted that she recently had an "increase in symptoms," and her bowels were not perfect but were back under better control. (R. 277.) He noted that Marshall had bouts of brief, sharp shooting pains as well as cramping and occasional dizzy spells. (*Id.*) Dr. Goldman also performed a colonoscopy and biopsy in 2008, which returned a basically normal result. (R. 278.) In 2009, he completed a residual functional capacity ("RFC") questionnaire indicating that Marshall had chronic diarrhea, nausea, and abdominal pain and cramping, and noting: "cramping occurs every day. Very severe. Can last minutes to hours." (R. 308.) Dr. Goldman

5

added that during severe cramping episodes, Marshall was unable to perform normal activities. (*Id.*) He found that she experienced symptoms frequently during a normal workday but noted that her condition would vary between "good" and "bad" days. (R. 309.)

Dr. Mir Ali had Marshall as a patient from 2005-10. (R. 411.) Dr. Ali also diagnosed Marshall with Crohn's disease and rheumatoid arthritis. (R. 396.) Her symptoms included severe cramping, abdominal tenderness, frequent diarrhea that was getting worse, stiffness and pain in her joints, and severe abdominal pain several times per day, according to Dr. Ali, who gave Marshall a prognosis of poor and getting worse. (*Id.*) Dr. Ali reported knee pain and other joint pain that caused difficulty walking, noting that Marshall always had a severe limp. (R. 411.) An examination of Marshall's knee pain in 2005 revealed a deformity of the right fibular head, which was likely secondary to old trauma, with a note that the exam indicated early right lateral and medial compartment arthropathic changes. (R. 424.) Dr. Ali indicated that the impairments could be expected to last for at least several months and affected Marshall's daily activities. (R. 396.) Frequent, debilitating arthritis pain and Crohn's symptoms impeded Marshall from performing simple work tasks, and Dr. Ali indicated that Marshall was incapable of even low stress jobs. (R. 397.) She could neither sit nor stand for more than thirty to forty-five minutes at one time and would require ten-minute bathroom breaks every hour. (R. 397-98.) Dr. Ali also found that Marshall could never crouch, climb ladders or climb stairs, and could rarely stoop and occasionally twist. (R. 399.) Dr. Ali

6

indicated that Marshall's impairments would lead to more than four work absences per month. (*Id.*)

Dr. Matilal Bhatia, who saw Marshall as a patient in 2004 and from 2006-10, also diagnosed her with Crohn's disease and persistent symptoms that included chronic diarrhea, abdominal pain, cramping, nausea, and fatigue. (R. 401.) Like Dr. Ali, Dr. Bhatia reported that the impairments would last several months or more, frequently impeded Marshall's ability to perform simple work tasks and would prevent her from taking even low stress jobs. (R. 402.) Dr. Bhatia found Marshall's physical limitations to be even more pronounced than Dr. Ali did: Marshall could sit for no more than thirty minutes, stand for no more than ten, and would require a twenty-minute bathroom break every two hours and regular periods when she would simply need to stop and rest. (R. 403.) Dr. Bhatia also reported that Marshall would experience a mix of good and bad days, (R. 404), and that her symptoms were progressively getting worse, (R. 411). At a follow up appointment in 2011, Dr. Bhatia noted that Marshall's various pains persisted. (R. 413.) On the RFC questionnaire in 2010, Dr. Bhatia stated that the limitations and impairments continued to apply and had applied to the time period prior to 2008. (R. 429.)

### b. Non-Treating Physician

An ALJ previously assigned to this case requested the opinion of Dr. Sai Nimmigadda (R. 382), who reviewed Marshall's medical records from May 2006 through August 2010. In a medical interrogatory, Dr. Nimmigadda found that Marshall had Crohn's disease with multiple exacerbations but no "significant

limitations," ulcers, or other complications, noting that the lab reports and inflammation markers did not show severe disease. (R. 393.) The doctor found that the claimant had been managed well on medications. (*Id.*) Dr. Nimmigadda also found that the rheumatoid arthritis was "mild" and had not led the claimant to motor weakness, joint problems, or abnormalities in her extremities. (*Id.*) The only limitation noted by Dr. Nimmigadda was that Marshall could not stoop or squat. (*Id.*) Marshall's claims of fatigue were inconsistent with the medical records, according to Dr. Nimmigadda, who found that the claimant was "only partially credible" in her claims of chronic pain and arthritis. (R. 393-94.) Dr. Nimmigadda found that medication had controlled the acute periods of Crohn's disease that the claimant had experienced and that the claimant merely had intermittent episodes of disease exacerbation. (R. 393.)

Dr. Nimmigadda determined that Marshall could climb ladders or scaffolds occasionally and could work at unprotected heights frequently. (R. 386-87.) Dr. Nimmigadda also found that the claimant could walk a block at a reasonable pace, on rough or uneven surfaces, and without using two canes or crutches. (R. 388.)

### 4. *Vocational Expert's Testimony*

The vocational expert testified that there would be no available positions in the regional job market for a person of Marshall's age, education, and work experience who is limited to semiskilled light work, sitting or standing for six hours per day and walking for two hours per day, able to work at unprotected heights and occasionally climbing ladders or scaffolds, and requiring three brief unscheduled

8

bathroom breaks per eight-hour shift. (R. 67-68.) If the same person were limited to one brief unscheduled bathroom break, there are 700 jobs as a mail clerk; 1,100 jobs as a router; and 750 jobs as a collator. (R. 69.) However, if the person missed work two times per month, those positions would be eliminated except in employer-specific cases. (R. 70.) And if she could lift less than ten pounds, could not climb or balance, and could sit or stand for less than two hours per eight hour workday, there would be no available positions. (R. 69.)

### C. ALJ Decision

The ALJ found that Marshall had not engaged in substantial gainful activity from her initial onset date of May 1, 2006 through her date last insured of September 30, 2008. (R. 21.) The ALJ also found that Marshall had severe impairments from inflammatory bowel disease, Crohn's disease, osteoarthritis and degenerative disc disease. (*Id.*) The ALJ stated that none of the impairments, alone or in combination, met or medically equaled any listing of impairments. (*Id.*)

The ALJ next determined that Marshall had the RFC to perform light work, with the following additional limitations: only occasionally climbing ladders, ropes, and scaffolds; frequently working at unprotected heights, with moving mechanical parts, or by operating motor vehicles; and requiring up to one brief, unscheduled bathroom break during the day. (R. 22.) After reciting the claimant's medical history and test results, the ALJ concluded that despite the persistence of symptoms, Marshall's "condition has stabilized," pointing to her August 2010 exam results that showed no joint problems or motor weakness. (R. 24.) The ALJ accorded

9

little weight to Dr. Goldman's testimony, finding that he failed to fully determine Marshall's workplace capabilities and "his opinion is largely inconsistent with the medical evidence of record." (R. 25.) Dr. Ali's testimony similarly received little weight because there was "no indication that [it] specifically relate[d] to the period at issue" and was unsupported and inconsistent with the treatment records. (*Id.*) The ALJ accorded little weight to Dr. Bhatia's opinion, finding it inconsistent with the medical evidence of record and conclusory. (R. 25-26.) Finally, the ALJ accorded "great weight" to the opinion of Dr. Nimmigadda, who had "thoroughly reviewed the claimant's medical records and issued a well-supported opinion that was consistent with the medical evidence of record." (R. 26.) Using the Medical-Vocational guidelines along with the testimony of the vocational expert and Marshall's RFC, age, and work experience, the ALJ concluded that there were significant numbers of jobs in the Chicago metropolitan area that Marshall could perform, such as mail clerk, router, and collator operator, and thus Marshall was not disabled. (R. 27-28.)

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a claimant is disabled, the ALJ considers the following five questions in order: (1) Is the claimant

10

presently unemployed? (2) Does the claimant have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the claimant unable to perform his former occupation? and (5) Is the claimant unable to perform any other work? 20 C.F.R. § 416.920(a)(4) (2008).

An affirmative answer at either step 3 or step 5 leads to a finding that the claimant is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The claimant bears the burden of proof at steps 1-4. *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its

11

judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841.

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a claimant, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ "must at least minimally articulate the analysis for the evidence with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Murphy v. Astrue*, 498 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions, and must adequately articulate his analysis so that we can follow his reasoning.").

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the court. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

**III. ANALYSIS**

Marshall argues that the ALJ decision was in error because, in determining her RFC, the ALJ: (1) incorrectly weighed the medical evidence and (2) improperly analyzed Marshall's credibility.[1]

**A.     Medical Evidence**

Marshall argues that the ALJ erroneously gave less than controlling weight to the opinions of treating physicians Goldman, Ali, and Bhatia. The ALJ "must offer good reasons for discounting the opinion of a treating physician." *Scott v. Astrue,* 647 F.3d 734, 739 (7th Cir. 2011). Even if the decision includes sound reasons for refusing to give the treating physicians' assessment controlling weight, "the ALJ still would have been required to determine what value the assessment did merit." *Id.* The regulations require consideration of the "length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Id.*

The ALJ gave all three treating physicians' reports "little weight." (R. 24-26.) For Dr. Goldman, the ALJ stated that he failed to "fully determine the claimant's workplace capabilities" and that his opinion was inconsistent with the medical evidence of record. (R. 25.) Yet Dr. Goldman testified to a wide range of symptoms

---

[1] Marshall also argues that the ALJ incorrectly applied the vocational expert testimony to find that Marshall could have worked in several thousand potential jobs in the regional market. This argument is based on the allegedly improper interpretation of the medical evidence and the claimant's credibility, however, and need not be considered separately.

and impediments—Marshall's workplace capabilities were a small part of his report—and the ALJ gave no indication of whether the rest of Dr. Goldman's testimony deserved any weight, although it appears that it received none. (R. 24-25.) Similarly, the ALJ gave Dr. Bhatia's testimony little weight, finding it inconsistent with the medical evidence of record and adding the critique that it was conclusory. (R. 26.) The "conclusory" label belongs on the ALJ's assessment here, rather than on Dr. Bhatia's testimony. The ALJ also gave little weight to Dr. Ali's testimony, pointing to the treatment records relating to knee problems and Marshall's use of a cane that conflicted with the doctor's testimony. (R. 25.) Yet the treatment records indicate that the claimant did seek treatment for a knee problem. Dr. Ali treated Marshall from 2005-11, noting "multiple exacerbations of both [Crohn's and rheumatoid arthritis]" and that "she was always limping severely," (R. 411), despite the ALJ's assertion to the contrary, (R. 25). Further, in dismissing Dr. Ali's opinions, the ALJ made no mention of Marshall's abdomen or any of the Crohn's symptoms, which were a significant part of Dr. Ali's report.

Drs. Goldman, Ali, and Bhatia were all treating physicians who found that Marshall had severe cramping, abdominal pain, and other significant impairments, and the ALJ did not point to any specific evidence that justifies giving their opinions lesser weight, with the exception of a faulty critique of Dr. Ali's report on knee pain. Nor did the ALJ indicate whether she credited any of their testimony. The ALJ did not meet the burden of establishing that the testimony of treating

physicians should be given less than controlling weight, which must be remedied on remand.

Marshall also faults the ALJ for relying on a non-treating physician, Dr. Nimmigadda, whose review of the medical evidence contained alleged errors. The principal errors alleged by the claimant are a failure to appreciate the severity of both her Crohn's disease and her rheumatoid arthritis. Marshall makes a three-step argument: (1) the errors indicate a flawed report from Dr. Nimmigadda, (2) the flawed report should have been given little weight in the RFC finding, and therefore (3) by giving great weight to the doctor's report, the ALJ committed reversible error. The Court need not undertake this detailed examination of Dr. Nimmigadda's report, however, since Dr. Nimmigadda's report conflicted with the findings of the treating physicians and the ALJ failed to demonstrate why the treating physicians' testimony did not deserve controlling weight, as discussed above.

### B. Credibility

Marshall claims that the ALJ erred in finding that her claims of impairment were not credible. An ALJ's credibility determination receives substantial deference on review unless it is patently wrong and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Jens v. Barnhart,* 347 F.3d 209, 213 (7th Cir. 2003). The ALJ must give specific reasons for discrediting a claimant's testimony, however, and the reasons must find support in the record and be "sufficiently specific to make clear to the individual and to any subsequent

reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Zurawski*, 245 F.3d at 887-88.

The ALJ's credibility determination found that Marshall's impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's and her husband's statements concerning the intensity, persistence and limiting effects of these symptoms . . . are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 23.) This boilerplate credibility template has been criticized by the Seventh Circuit as failing to indicate "in a meaningful, reviewable way . . . the specific evidence the ALJ considered in determining that claimant's complaints were not credible." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). More troubling still is that the template "implies that the ability to work is determined first and is then used to determine the claimant's credibility." *Id.* at 645. Such an inverted approach violates the rule that a claimant's statements about the intensity and persistence of pain or other symptoms cannot be disregarded solely because they are not substantiated by objective medical evidence. *Id.* at 646 (*citing* SSR 96-7p). The claimant's credibility must be factored into the RFC determination, not result from it.

The ALJ's reasons for finding Marshall's complaints not credible in this case are based on a comparison of the claimant's description of her activities of daily living, the medical record, and the claimant's and her husband's description of the severity of her condition. The ALJ noted that, while the claimant and her husband described her condition as unremittingly severe, the treatment records indicate "an

16

essentially normal colonoscopy" and that the Crohn's disease was "causing only mild problems" during the period at issue. (R. 26.) Further, the ALJ found that the claimant's daily activities were inconsistent with the description of ongoing, debilitating pain. (*Id.*)

However, the absence of objective medical evidence supporting the subjective complaint is only one factor to be considered in the credibility determination. *Scheck v. Barnhart,* 357 F.3d 697, 703 (7th Cir. 2004). When assessing the credibility of an individual's statements about symptoms and their functional effects, an ALJ must consider all of the evidence in the case record. *See* SSR 96-7p.[2] "This includes . . . the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists . . . and any other relevant evidence in the case record." *Id.* at *1. In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own observations of the individual as part of the overall evaluation of the credibility of the individual's statements. *Id.* at *5. In this case, the medical record appears to be the principal basis on which the ALJ made the credibility determination. Any other bases are not easy to discern. Indeed, the ALJ summarized Marshall's testimony, recited contradictory medical conclusions, and then wrote, "For these reasons, I find their statements less credible." (R. 26.) Simply finding the claimant's description to be

---

[2] Interpretive rules, such as Social Security Regulations ("SSR"), do not have force of law but are binding on all components of the Agency. 20 C.F.R. § 402.35(b)(1); *accord Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

inconsistent with the medical evidence of record is insufficient to discredit the claimant.

Furthermore, the ALJ's interpretation of Marshall's daily activities does not appear to be inconsistent with Marshall's description of her own impairments. The ALJ found that Marshall's condition had stabilized but her symptoms persisted. Since Crohn's disease is defined by symptoms that flare up periodically, it is not clear how some stabilization renders Marshall's description incorrect. In addition, the ALJ describes Marshall as claiming that her pain was "unremittingly severe" (R. 26), but this is inaccurate: Marshall described a severe pain that was not continuous but intermittent, (R. 50-55), which is consistent with Crohn's. The ALJ noted that Marshall was capable of preparing simple meals and shopping in stores, that she spoke on the phone with her parents and attended religious gatherings. (R. 26.) The ALJ did not explain why those activities are inconsistent with Marshall's subjective complaints, however, nor how they demonstrate an ability to work. In sum, the ALJ inappropriately relied on the medical evidence as the sole basis for finding a lack of credibility, and in doing so mischaracterized aspects of Marshall's own description of her condition. On remand, the ALJ's credibility finding must not be conclusory; instead, it must draw a logical conclusion based upon all the relevant evidence as applied to the factors listed in SSRs and case law.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Dellise Marshall's motion for summary judgment [Doc. No. 19] is granted in part and denied in part. The Court finds that

18

this matter should be remanded to the Commissioner for further proceedings consistent with this order.

**SO ORDERED.**　　　　　　　　　　　**ENTERED:**

*/s/ Maria Valdez*

**DATE:　November 30, 2012**

　　　　　　　　　　　　　　　　　　**HON. MARIA VALDEZ**
　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**